All right, Mr. Hungar, we're ready when you are. Thank you, Your Honor, and may it please the Court, Thomas Hungar for the BP Appellants. I'd like to begin by addressing class counsel's jurisdictional arguments and then walk through the key provision of the settlement agreement that explains, or that shows, how the district court effectively deleted two key rights set forth in that provision. First, the party's right of access to predetermination, claims-related data, for all legitimate purposes. And second, the party's right of access to all claim information for purposes of appeal, whenever needed for appeals. Rather than try to defend these two errors of the district court, class counsel focused their arguments on trying to defeat this court's jurisdiction. But appellate jurisdiction is proper under the Collateral Order Doctrine and Section 1292A1. Class counsel concede that the three traditional elements of the Collateral Order Doctrine are satisfied here. The district court's order conclusively determined the issue. The issue is separate from the merits and is effectively unreviewable on appeal from final judgment. Class counsel instead argue that there's essentially a fourth requirement, a stand-alone importance element, but that is not correct. Importance is a consideration that is assessed as part of the second and third elements, which, as I've noted, are established here. As this court said in the Henry case, and as the Supreme Court said in the digital equipment case, the importance factor or consideration under the second and third prongs basically asks whether the interests that are at stake and that would be threatened if immediate appeal is not permitted are, quote, weightier than the societal interests advanced by the ordinary operation of final judgment principles, close quote. And that is true here for several reasons. First of all, a very important distinction in this case from all the cases that class counsel rely on is that this is in the post-judgment context. So we aren't faced with the situation of the potential risk of creating a loophole in the final judgment rule by allowing a category of pre-judgment orders to be appealable. This is in the post-judgment context and in this court's decisions in Walker and Deepwater Horizon 1 where collateral order review was allowed, the same was true, which is why those cases are directly relevant and most supportive of jurisdiction here. Secondly, the interests at stake here include the interest in not being forced to pay money wrongfully in a manner that would be effectively unreviewable later, even if you assume there is going to somehow be a second final judgment from which BP could appeal at some later state to try and challenge improper awards paid months or years earlier, as this court recognized in the Deepwater Horizon 1 case where money is being paid out to individual claimants under this settlement program. The risk to BP is that those funds will be practically unrecoverable if appeal is delayed and therefore BP suffers irreparable injury and its interests are defeated if it's not allowed to bring an immediate appeal. Precisely the same principle is established and applicable here. And then finally, the settlement agreement in Section 4.4.14 sets out multiple reasons why access to predetermination information is necessary, including for the operation of BP's separate OPA claims facility and for financial reporting purposes and for the other purposes listed there, all of which would be frustrated if BP isn't given access to predetermination claims-related material. What is your limiting principle? Well, there are several limiting principles. First of all, as I noted, this is the post-judgment context, so we're not talking about the run-of-the-mill case where there are predetermination, I'm sorry, pretrial or prejudgment rulings that people are trying to appeal. In that context, the final judgment rule says those rulings merge into the final judgment and we generally require you to wait. We're in a very different situation here. Secondly, the fact that money is being paid out the door to the other side that may well be unrecoverable because it's far from clear that BP would have a right to challenge that later that would be effective given that the money may have been spent. So is it your position, though, that every dispute about the settlement is immediately appealable at this point? No, Your Honor. Those criteria would have to be met. That is, not every dispute about the settlement or dispute about the operation of the settlement program is going to entail money going out the door that BP can't be sure of recovering later if its rights are ultimately established. Has this court thus far declined to grant jurisdiction in any of the appeals related to the settlement? Yes, Your Honor. Not that I am aware of in a BP appeal, of which there have been only a handful. That's what I'm talking about. In the BP appeals, all of them have had granted jurisdiction, right? Well, to be clear, appeals brought by BP, the court has granted jurisdiction in the handful that BP has brought over three years. There have been other appeals. There were a couple, or actually I think nine, consolidated claimant appeals relating to an arbitration issue that they claimed was arising under the settlement. I'm sorry. The court ultimately dismissed two of those appeals for lack of jurisdiction and then rejected the rest on the merits. But yes, there were two appeals that were rejected for lack of jurisdiction. How is this comparable or not comparable to Deepwater I, which involved the improper accounting methodology used to calculate many claims? It's comparable. Obviously, the underlying issue is different, but the reason why collateral order review is appropriate is precisely the same because there, as in here, the fundamental legal question being raised meant that money was going out the door from the settlement program that would be effectively unrecoverable by BP if it couldn't get immediate review. And in those circumstances, the court said review was appropriate. Should the court distinguish cases based upon whether they involve hundreds of millions of dollars or just millions of dollars in granting its appellate review? I don't think so, Your Honor. This court in the Walker case, which was another post-judgment consent decree situation where the court recognized collateral order doctrine, the amount of money at stake there was, I think, under a million. It was like $900,000.  because it would be trivial. But we're talking about millions of dollars here, which is undisputed, and that's a very significant interest. We're also talking about the integrity of a court-supervised settlement program and of rights to transparency that are conferred under that program. This is not merely a private agreement, as class counsel suggests. It's a court-approved, court-entered consent decree under Federal Rule 23, and there is an important public interest in the transparency and openness and proper operation and integrity of such a program, which these rights were designed explicitly to foster. Can I ask a question? I was going to ask you. In context, why isn't this more like the context of a consent decree in not this case but in a wide range of cases in which the court has supervisory authority? There are a lot of different orders, if you will. There are a lot of moving parts going on well before there's, quote, binality, unitariness, et cetera, et cetera. I mean, in the complex litigation that occurs. But I'm not reading you to say or import that in those kind of worlds that these various interim orders, et cetera, and a consent decree, where you move the schools, da, da, da, da, that all those are collateral order-type appeals. Now, I recognize this is different. But I'm just saying, kind of in the world of consent decree, if you will, settlement orders, contextually, I mean, beyond the dollars paid out, which you've said in and of itself isn't the focal point. But, I mean, surely it's not any time either side is aggrieved by the consent decree or the settlement, absent life or death, that that's appealable. I mean, you're not arguing that, right? Correct. Correct. As I said, there could be many orders that would not be appealable. But what's important, although, again, the post-judgment consent decree context is significant because the concerns that motivate the rigorous restriction of the collateral order doctrine in the pre-judgment context are not as directly implicated here. One of the things the court said in the Walker case, where it recognized post-judgment collateral order jurisdiction over an order that was going to result in money going out the door from one of the parties to the other, was that in the post-judgment context, it's not even clear that there will be a subsequent final judgment that would somehow merge everything else and allow a later appeal. And, moreover, money was going out the door there, just like money was going out the door here, as a result of the district court's order, which is a limiting principle that distinguishes this from the run-of-the-mill post-judgment consent decree context. This is post-judgment. Run that by me one more time, because I am missing that. I'm sorry to be thick about it, but this is post-judgment. Why? Because the final judgment, for purposes of Section 1291, was entered by the district court in December of 2012 when it gave final approval to the settlement agreement, entered the consent decree, and that was appealed by some objectors as a final judgment to this court. So we're now in the post-final judgment context, just as in the Walker case where there was a consent decree that was the final judgment, and the court there said, in effect, there's been a final judgment. It's not clear there's going to be another one, because we're now in the operation of the consent decree. Well, this is post-judgment in that sense, but, of course, it isn't a post-judgment order in the sense that  or they're denied getting money in their hands, there hasn't been a final judgment as regards individual claimants, right? That's why I guess what I'm not... Well, there's another appeal pending which addresses the question whether an award to an individual claimant when it's challenged through the district court and then on appeal to this court, whether that's appealable. Although, even there, I think a final judgment is typically the judgment that resolves the entire case, and the argument there would be those are interlocutory because they only resolve individual claims of individual claimants, but we believe they're appealable under a separate provision that allows for interlocutory appeals or under the collateral order doctrine, again, because that falls into the discrete category of orders that are causing money to go out the door in a way that Deepwater Horizon 1 recognizes is effectively irreparable if BP can't appeal immediately, because, as a practical matter, it's not going to be able to get all that money back, and that's what distinguishes this from the run of the mill, and under Deepwater Horizon, this is the same situation, and precedent compels the conclusion we submit that jurisdiction is appropriate. And as we've noted in the briefs, we think jurisdiction is also appropriate under Section 1292A1. I don't understand how that one works. I'm thick there. I don't understand how that works at all on the grant or modify injunction because the central command of the injunction is addressed to the claims administrator, not the parties. Yes, Your Honor. So I don't understand why that... You can be held in contempt of that. Well, in Deepwater Horizon 1, this court characterized the injunction that it approved and issued, or ordered the district court to issue, running to the claims administrator as an injunction, but also the order, the March 25 order, in addition to instructing the claims administrator what to do, it also instructs VP and class counsel not to get access to this information. And indeed, as we noted in footnote 4 of our reply brief, the claims administrator sent a letter to the parties under the directions of the judge, just making clear that because of the way the system is set up, it's still possible, even today, as I understand it, for the parties to get access to predetermination claims data, and the letter was making clear you can't do that. And so there's still the provision of the injunction of the March 25 order, which says neither VP nor class counsel is to access the program data for the identified claims. That's still operative, and if they were to violate that, I submit they would be... could be punished for contempt. Can you explain exactly what it is that you need that would show you that these prior claims were not paid correctly long after the fact? The information that VP needs, Your Honor, is the all claimant-submitted claims-related data, and Section 4.4.14 explicitly grants access at all times for all legitimate purposes, including but not limited to appeals, for financial reporting and other important purposes as well, access to claims-related data and claim files. And then the however sentence excludes claim files but not claims-related data from that broad right of access to predetermination data. The district court completely reads out of the agreement the right of access to claims-related data at all times. It also reads out of the agreement, if you look at the however sentence, the however sentence says you don't get access to claim files for predetermination information, but you do get access to predetermination claim files whenever needed for appeal. The district court order reads that out of the agreement also. So there's a right of access to claims-related data, which the agreement makes clear includes claimant-submitted information, because that's how the term is used and that's what the definition of claims is. So we have a right of access at all times to claims-related data. We also have a right of access to claim files if needed for appeals. And the district court gives us nothing, whether it's needed for appeals or for anything else. So it violates both our right of access to claims-related data and our right of access to claim files. The way I read that last sentence is that the word resolved means the end of the case vis-à-vis the claimant. Finally resolved. So once there's been a determination made by the claims administrator, OK, you want $100,000, I've looked at all of this, and you're going to get $50,000. That's my determination. Then at that point, the possibility of an appeal arises on both sides, BP and the claimant. And that's when the claim file becomes accessible. Yes, so that's what it says. The claim file, which becomes accessible when the claims administrator makes a final determination of whether there's going to be an award, except the rest of that sentence says except if the claim file is needed by BP, etc., to prosecute or defend an appeal. So the except obviously applies to that predetermination claim file. And again, as we've explained in our brief, the parties actually agreed on an interpretation of these terms that limits claim file to the context of work papers of the settlement program and gives access to the other material across the board. So you argue there was a sea change. There's a period in which you're able to get what you needed and then sort of a sea change when you weren't able to get what you needed. I'm not trying to oversimplify. Yes, Your Honor. Right? Yes. So, I mean, I read all this, but I read it weeks ago, and it's a lot, and you all live with the case, and we haven't. So some of this is merging on me. We've got deep water, you know, and volume. So it's kind of hard to get the head around. So the essence of the sea change was what? The essence of the sea change was that under the claims administrator's policy, which the claims administrator recognized was consistent with the party's agreed upon interpretation, BP and class counsel had access to predetermination data whenever needed for this range of legitimate purposes, the only exception being they did not have access until a final determination of a claim was made to the settlement program's work papers, the internal analyses of the settlement program, and that is consistent with what we believe this court should hold. There's no dispute between the sides in terms of what's work product and what's not. No, that's not in dispute. That's not being disputed, correct. Okay. It's not in dispute. All right. Most of your argument went to the jurisdiction matter a little here. If you need more time to develop, and I think you may have some more questions, but if there's some more time, I'm willing to give you some more time on the clock to further develop that argument since you ran out. I mean, most of . . . we talked about jurisdiction for good reason, but before you sit down and are stuck with just rebuttal, is there more you want to say on the merits of it? And if so, I'll give you two minutes, three minutes for you to fully make the argument, or are you satisfied with what your presentation is? Thank you, Your Honor. I guess I'd just like to make one additional point. In addition to the two textual points I made about the right of access at all times to claims-related data and the right of access to claim files when needed for appeals, simply that in addition, as we've submitted the undisputed record evidence, the declaration from a lawyer who attended the meeting in June and July of 2012, the documents from the employees of the settlement program confirming, who were present at the meeting confirming that this agreement was reached, the undisputed evidence establishes that the parties agreed upon how these terms would be understood and interpreted and applied, and for seven months, the course of dealing of the settlement program in the parties was that this access was being provided, only after the fact, after final approval of the settlement agreement by the court, when BP had begun bringing appeals, did class counsel change course and raise objections. But even then, they're not claiming that no such agreement was made, they're just saying they don't remember what they said. That doesn't refute the existence of an agreement. When you come back, will you talk again about the argument that, since only a small number of these cases are ever actually appealed, that this means that it's not significant enough? I know you believe importance is hedged in 3 and 4, but that it's not a big enough deal, so to speak, to merit jurisdiction. Thank you. All right. Thank you, sir. All right. Mr. Zakaroff. Chief Justice Stewart, may it please the Court, Samuel Zakaroff on behalf of the class. I will also turn to the jurisdictional issue first. And this is, I think, the seventh case that I've argued in this court on the BP settlement. It is the eighth one I've attended. I've been counsel on two en bancs. I've been counsel on an application for a stay and a cert petition in the Supreme Court. The idea that there are not many appeals, the idea that there is jurisdiction on the 100,000 claims that remain before the claims administrator is preposterous. There is no justification for it in any body of appellate jurisdictional law. There is an argument made that Deepwater Horizon established that in the post-settlement period, the post-judgment period, anything is appealable under the collateral order doctrine. To begin with, Deepwater Horizon did not occur in the post-judgment period. Deepwater Horizon, one, occurred while there were appeals pending before this court. Those appeals did not become final until the denial of certiorari last December 8th, which means that even on Mr. Hungar's distinction between the pre- and post-judgment period, that doesn't hold up because there was still active appeals on the merits during this period. This court has previously had to encounter this question not just in the consent decree circumstance raised by Chief Judge Stewart, but also in a class action, in a multifaceted class action context. In the In Re Lease Oil litigation, which was the largest litigation on what we can call generally oil and gas disputes until this present case, this court heard appeals from interim awards made to individual claimants pursuant to a class action settlement which had a damages program associated with it. In the McMahon v. Amaretta Hess case, which I grant is not published, but it's an opinion of Judge Smith for this court, in which he says until the district court disassociates itself from the case, we are not going to hear appeals. We do not have appellate jurisdiction under any of the doctrines associated with this court's jurisdiction. And in the SSC acquisition case, which was a consent decree case, as Chief Judge Stewart noted, this court, again in an unpublished opinion, but nonetheless relied on the McMahon case for the idea that we do not have interlocutory review of every step of administration of a court-approved consent decree or a court-approved class action settlement. There is the only basis for the claim that's made in this case and in the many other disputes is footnote 3 of Deepwater Horizon 1. And I would like to address that, but first I would like to note that this court has not yet ruled on the jurisdictional issues raised in the repeated, repeated, repeated BP appeals. There are four cases pending before this court, before a panel that we argued before, Mr. Hungar and I, last October, that raised this issue. It has not been resolved. It was raised again in an appeal that BP brought regarding the removal of Mr. Juneau, the claims administrator. After the argument, they withdrew that appeal. They abandoned it. That argument focused heavily on the jurisdictional question before this court. I would say the following about the resolution in Deepwater Horizon 1. That case relied on the Stewart case. It's the only case that's cited by the footnote 3. And it also relies on the reasoning of this court in its most important collateral order ruling, the Henry case. The Henry case predates the most significant U.S. Supreme Court decision on the collateral order doctrine, which is the Mohawk case of 2009. This court has not yet engaged, the Fifth Circuit overall, has not yet engaged the rationale of the Mohawk case. The Mohawk case stands for the proposition that unreviewability, finality, is not the standard for collateral order review. We cite the Mohawk case in our brief. What Mohawk stands for is that if there is to be a dispute as to administration, you either wait until the end or you go up on mandamus. Unreviewability is too open a window for court-made doctrine to substitute itself for the clear appealability standards of 1292. That is not a power that the courts have. That is what Justice Sotomayor wrote for a unanimous court with Justice Thomas wanting to go even further in that case. And so what we have here is an example of a claim that because it has to do with something that is putatively final, and in this case it's an absurd one to claim it's putatively final because these are all when you get the elements you need for an appeal. So we haven't even exhausted the internal mechanisms yet. But even leaving that aside, the claim is that anything that is ruled upon by the district court in its administration and settlement is automatically appealable. Because it's post-judgment. Because it's post-judgment, because it might not be reviewable, the very standard rejected by the Supreme Court in Mohawk. You concede, though, that it's not reviewable. It's not practically reviewable. No, Your Honor. This particular one is eminently reviewable. How? Because if they get the data for the appeal of the individual determination, it's now part of the record. It goes to the appellate tribunal within the settlement, and from that it goes to Judge Barbier. And from Judge Barbier, on their theory, it all comes to this court. So even under the facts presented, it's not clear at all why it would be unreviewable. How is BP supposed to determine whether they need access to the claims files in order to prosecute or defend the appeal if it cannot access the claims-related data? Well, Your Honor, they are seeking not claims-related data. They keep changing. If you read their brief carefully, Your Honor, what you'll find is that they keep using the term claim-specific data. And by claim-specific data, they mean everything in the claims files. They have no textual argument that this is truly in their favor. If you look at page 2 of their brief, they say the following. They say Section 4.14 governs the parties' access, claims-related data, and claims files. And they say it sweepingly provides BP and class counsel with access to all claims-related data at all times for any legitimate purpose. And there's quotation marks all over the place in that sentence except for the words they had to insert, at all times, because there is nothing, nothing in the settlement agreement that provides BP with access to what's inside the claimant's submission at all times. This was a negotiated point between the parties. They wanted to maintain the integrity. They wanted to maintain the confidentiality, the privacy associated with submitting all of your economic activity, including by some folks who might be in business competition with BP. And so there was the capacity to maintain the integrity of the claimant information, and that's why the language of the agreement is so specific that they do not have access to any claim files for claims unless they show need. And, Your Honor, our position on the merits is not that they can never have access to this information. The argument is that they have to show two things according to the express language of 4.414, which is it's necessary and it's legitimate and the purpose is legitimate. What they set up behind our backs with some of the vendors was that they were able to data mine, that they were able to run basically spiders, as the terminology is used, through a web program that included everything submitted by the claimant. At that point, there was no protection whatsoever to the integrity of the claimant's file, which is one of the negotiated points that we have here. Now, they also do something interesting, and Mr. Hungar raised this again just now. In their opening brief, they make the argument this is textual, that this is straight out of the text of the statute, and as I said, even in the beginning of the brief on page two, they have to modify the language, and then they modify it repeatedly by using this term, claim-specific rather than claim-related data. But then at the end of the brief, they say, and Mr. Hungar repeated it here today again, they say, well, it was changed post-ratification. This is the question Chief Judge Stewart asked, what happened afterwards? Well, we discovered it. We didn't know. This was done behind our backs, and we protested, and we said this is in disregard of the express language of the agreement. Judge Barbier found to the same. Then they say, but we have another argument. You agreed to this after the fact. There was a ratification of this practice by the parties. We never agreed to it. There's no instrument. This is a case with thousands of pages of documentation of the agreement between the parties. There's no instrument that reflects our agreement to this. Our lead counsel on this, Mr. Herman, says, I don't remember ever reaching this. They make fun of him. They say, oh, how convenient not to remember. If we wanted to be convenient, we could have said we didn't. We said we have no recollection of having entered into this. The district court made an express finding. There was no consent. There is no evidence of consent by class counsel to this practice, and so the clear language of the agreement holds. On any theory of appellate review, on any theory, assuming the jurisdiction, this court should defer to the district court, not only because that would be under the clearly erroneous standard, but on the Supreme Court's recent decision, which occurred after our briefing in the Teva Pharmaceutical case, the court said there's a special duty to defer to the district court when there is contextual language, when there is an understanding that arises from long superintendence of the litigation process. And here we have not only the normal standard of review, but we have the caution of the Teva Pharmaceutical court, which incidentally was raising that on a matter of law. This is the so-called Markman hearings, and it said even on a question of law, even where there is nominally de novo review, you still have to defer to the district court's understanding of how the parties have acted, how they have negotiated, what they have resolved among themselves, what they have presented. This is all in the district court's wheelhouse. And Chief Justice Stewart, Chief Judge Stewart, you asked Mr. Hunger, you said we don't live with this case the way that the lawyers do. This panel does not live with the case. You have not been in BP. Judge Elrod was on one mandamus panel, but I think that the rest of this court, except for the en banc, has not been on specific tribunals in BP. It's not just us that lives with it. It's also the district court, and the district court understood how the parties were administering this process. I'll continue. Well, if you've finished that thought, then I need to direct us back to Fit Note 3 of Deepwater Horizon 1, assuming that this is law in our circuit, it is jurisdictional law in our circuit, and we disagree with the proposition that it's not, why wouldn't this footnote say that we have jurisdiction in this case? I would offer two arguments. First, to the extent that there is a jurisdictional exception that's being invoked under the collateral order doctrine is indeed post-judgment. That was pre-judgment. This is truly post-judgment. We are now in the period where there is complete finality. That was, on any of the opinions, Judge Southwick's opinion, Judge Clement's opinion, Judge Dennis's opinion, they all addressed the emergent nature of the problem. Things were being paid out. But wouldn't it be cut the other way? I don't think it cuts the other way. I think that there is certainly more reviewability at that point. I take that to be the thrust of your question, Judge Elrod, that if there was still the— But that's pre. If you say that's pre because you're not considering 2012 December, the post time period, you have a different time period for pre and post than the opposing counsel does. It would seem that pre would be more reluctant to invoke collateral order than post, which is what we clearly have here. I think that the fact that there was uncertainty about the merits of the settlement cuts in favor of review as against opposing review. So that, for example, we did not seriously contest jurisdiction in Deepwater Horizon 1, in the BEL appeal. We noted in our briefs that we were puzzled by the jurisdictional basis for it, but we were prepared to have the court entertain it because it needed to be resolved so that the program could get going while the appeals were going on. In this case, there is just—it's either all or nothing. There is no—you asked at the beginning, Judge Elrod, what's the limiting principle, and I did not hear a limiting principle. The limiting principle seems to be what appeals BP will raise. Last time Mr. Hunger and I argued before this court, his limiting principle was we're just not going to appeal very many. I think that that argument gets old very quickly the more times that we are before this court. So I think that the fact that there was a resolution coming, but that payments were being made in those BEL cases, is what the court used to justify the jurisdiction. Okay, what's your second point? You said you had two arguments. One was post-judgment versus pre-judgment. I think that the BEL case did not, because of the way it was litigated, and there is law in this circuit and in other courts that says that if a jurisdictional issue is not well presented, is not fully litigated, is not presented as the core of the appeal, we don't give it precedential authority in all subsequent cases. Assume that we do give this precedential authority. Do you lose that argument, the jurisdiction argument here? I think if this court resolves that footnote 3 is fully precedential, that it's conflict with Mohawk notwithstanding, and that it is the binding law of this court, then I think that anything that falls under the categories of footnote 3 has to be the law of the court. And this would fall under categories of footnote 3? Well, if you don't accept the pre and post, that there is a distinction. If you don't accept the appeal from somehow the court in footnote 3 says the fact that this is being appealed from injunctions is significant to the collateral order review. If all those issues drop out, that is correct, Your Honor. I do have to concede that footnote 3. Well, there's a difference in the magnitude or the importance of the issue, too. There is a difference. A substantial difference. I took Judge Elrod's question to be, is that the governing law, that the availability of collateral order is as set forth in footnote 3? Then the question is, are there any distinctions here which are significant? One is the importance one. Even under the collateral order doctrine, we still have to meet the requirements of collateral order. Mr. Hungar says that importance is not a feature. It is inherent in the Cone v. Beneficial original formulation. If one looks at the opinion of this court in the Henry case, which is the leading case on the collateral order doctrine, there is an entire fourth category that is discussed at length by the court of, is it important? And if you look at the cases in which collateral order has been granted by this court, other than Deepwater Horizon in the post-Mohawk period, it's exclusively in cases that have a significant First Amendment component to it, anti-SLAPP provisions. There's two such cases. And there's one case in which the court was about to lose jurisdiction altogether, and so it decided to grant collateral order review. In the post-Mohawk period, other than footnote 3, this court has been constrictive of the use of collateral order and consistent with the Henry court's admonition it has to be really important. And so what we have here is a case that fails on the importance standard, no question about that. So even if we allow that. I have a question about that. Why does it fail on the importance statute? It involves lots of claims, involves millions of dollars, and claims that perhaps should not have been paid at all. This particular appeal does not involve millions of dollars. This particular appeal does not involve claims that should not have been paid at all. As the district court found, expressed fact-finding, the only three examples that BP can give of the results, the fruits of its data mining, involve things which have been cleaned up as a matter of the internal protocols of the court. And there is nothing in the record that shows that they could not have raised this issue on appeal. So we now have a standard practice that says you have a multi-employee employer. Let's look at whether the employees put in claims. You have a multi-unit landlord. Let's look at whether the tenants put in claims. And BP, under the terms of 4.414, could have argued to the claims administrator, we have a multi-unit landlord. We need to have information about how many of the tenants have put in requests. That's a simple thing to do. That doesn't give them the internals of the claim files. That gives them exactly what they need, the data, to make their defense. Do we look only, though, at those particular claims, or do we look at the way that this is affecting the injunction and the way that going forward they won't be able to get this information? Is that part of this appeal? I thought it was. Your Honor, the question is whether they have the right to this information categorically, despite the language of 4.414 and also despite the language of the two provisions of Section 6 of the settlement agreement that speak about when they get the claims files, or whether they have to ask for it. Nobody is saying categorically they can't have it at all. All we're saying is that they don't have a right to it. They have to establish the two textual conditions that are set forth in 4.414, which is do you have a legitimate need and do you have a real need? Do you need it now? If they satisfy that, then they are entitled to the information. Let me just give a couple of analogies. We have law in many jurisdictions that says there's no right to the information about a confidential informant in the pretrial period in the criminal context. If you have need and you show it, you get it, but you have to make a showing of some kind. You have to make a showing if you want to use a prior confession as an evidentiary matter. You have to show need and that it's interrelated, it's intertwined. There's doctrine for many jurisdictions on that. There's doctrine in all sorts of jurisdictions that information protected by privacy can be overcome through a warrant requirement in the criminal context or through a subpoena in the civil context. It's not a question of a prohibition. It's a question that 4.414, which the parties negotiated, provides that you have to have some threshold showing. They had no threshold showing, and they were internal to the information, not the data about what kind of claims, but they were internal to the information of all these claims, which is exactly what they were not allowed to have, absent some kind of showing. Can I take just one second on the injunction question? There is no injunction directed against the parties. This court in the Police Association case from New Orleans that both parties have briefed extensively said there has to be an order directed at the parties that can be followed up by contempt. The holder in the stake of the party in possession of all the claims files is the claims administrator. We cannot go and get it. The claims administrator has to give it to us. There is no meaningful injunction to us that says you can't go get it. What does that mean? We can't break in at night. We can't send spies in. We can't hack their computers. It's just an order directed to a subordinate official of the district court to say don't turn this over. Now, in the last appeal concerning the removal of Mr. Juneau, BP tried to argue that in fact he was a judicial officer, Mr. Juneau, the claims administrator, and that somehow we were the only parties that would be subject to injunction. They abandoned that position. After arguing in this court, they abandoned it. And so we take Mr. Juneau as he is depicted by the district court, as he's been found to be. He is a subordinate official of the district court. When the district court tells a magistrate do this, that's not an injunction. When the district court tells a court officer to do something, that's not an injunction. That's an order. Like any other order, it is appealable if appealable, but it is not an injunction directed to the parties. It does not trigger 1292A. All right. Thank you very much, Your Honor. Ms. Topgar, you back up. Thank you, Your Honor. A few points. First of all, just to address the argument, which I've heard for the first time today from opposing counsel, that we actually do have a right to get access to predetermination claims related data when we show need. That's directly contrary. We certainly agree that we do have that right, but that's directly contrary to the district court's orders. Indeed, we filed a motion for reconsideration saying at the very least, you have to give us access for appeals purposes because we need that information for appeals, and we provided a declaration giving examples where we did need that information and the district court denied it categorically. And I also want to correct a misunderstanding of the other side. Apparently, they seem to think that the fact that we get access to information once an award has been issued with respect to that award only somehow solves the problem. But that completely misses the point. For purposes of appeals, the reason we need access to predetermination data is because when a given award is issued and we need to check to see whether that award is proper in certain circumstances in order to make sure that the award is not duplicative or based on an improper claim of ownership of property, for instance, that in fact somebody else claims to own, we have to look at predetermination claims data of other claims in order to do the cross check. And we aren't able to do that under the district court's order merely by having the data associated with the particular claim, because what we need is the data associated with other claims that would help us to see whether that's an improper award. That's the whole point of why we need the predetermination data for appeals purposes. And of course we also need predetermination data for all the other purposes set forth in the agreement. Judge Elrod, with respect to your question about importance, there are several reasons why this case satisfies any version of the importance test. In the first place, as we explained in the briefs, we don't know how many more awards have been issued in the past year since we were denied access to all predetermination data categorically. We have no way of knowing how many additional improper claims have been paid out, how many more millions of dollars have gone out. We just know that before we were denied access, we had already found multiple examples and multiple categories of claims where these problems arise. You found $4 million worth approximately, and then they plugged these loopholes basically? No, Your Honor. Counsel also misdescribes the declaration and the findings of the district court. The district court did not say there had been a change. And the declaration from the employee of the settlement program did not say there had been a change. She was simply describing the existing protocols they had in place designed to try to prevent these problems. We agree that they are trying to prevent these problems, but in a claims program with hundreds of thousands of claims, it's inevitable that mistakes will be made. That's why the party's built in the appeals process and the right of access so that BP could double check and bring appeals. The no, Your Honor, was to the, they plugged the loopholes part of the question. But how many millions of dollars of errors did you find? Again, the examples that we provided in the record in this case involved $4 million worth of errors that we found. I don't think the declaration doesn't purport to be exclusive. It's simply providing examples of the kinds of claims in which these problems arise and notes that there could be additional problems. This is not a hostile question. The question is they say it's not a big deal and it's a tiny amount of money and we shouldn't be going through this because it's not important because it's such a small amount of money. I'm asking you, is there anything in the record that would tell me that it's more like I thought of millions of dollars? Yes, Your Honor. The declaration from Mr. Cantor that's in the record shows that even up to the time when the district court cut off access to the information, it was about $4 million. He had been able to discover about $4 million of improper awards that had been overturned by the appeals process as a result of our having access to this information. We don't know how many, I'm sorry? Finish your sentence. I didn't mean to cut you off mid-sentence. I was just going to say we don't know how many more millions of dollars have also been improperly paid out as a result of our lack of access. What's your response to Counsel Opposite's response about this spyware network, all this other stuff that triggered up and somewhat triggered the cessation of whatever you say you once could get and you couldn't get? I'm sorry, Your Honor. Well, as I recall it, Counsel Opposite is saying this is moving all along smoothly and then suddenly his words, not mine, behind their back, close quote, some kind of spyware effort to look at more than what otherwise was agreed to sort of triggers. I'm not trying to characterize it myself but just point to what the statement and I'm just asking you to respond to it simply because it was part of the argument made. That's all. Yes, Your Honor. Thank you. Obviously, we have a- I mean, to the extent it's germane, I mean, I'm just asking you since you're up on rebuttal to just respond to an argument that was made. The undisputed record shows that the parties agreed on the interpretation in the summer of 2012 and the claims administrator's documents that are in the record, in the record excerpts, show that this material was then made available to BP and class counsel on a consistent basis from that period on and BP was obtaining access as was its rights. There was no claim that this was contrary to what the settlement program had allowed the parties to obtain access to. BP was obtaining access. It's an electronic database to which the parties were given access in accordance with their agreement and in accordance with the claims administrator's policy so there was no- But there's no dispute that you did do more with the data than what was anticipated by your opponents? No, Your Honor. We completely dispute that. There's no evidence that that's the case. The only evidence is we obtained the access that had been agreed upon and that the claims administrator gave us and that that was entirely permissible. They may not have been aware of the technology that BP was using to effectuate its rights under the agreement but there's no dispute that the parties had equal access to this predetermination data in accordance with their agreement. It's a little unfathomable and to me a little unsettling that these are arm's length negotiated by some of the best counsel that could be found on the ground. It's been an extensive period of time yet we're thrust into these periodic determinations of what erstwhile counsel agreed to but now say they didn't agree to it or it meant something different so we're getting all these iterations of panels having to look at what you all agreed to down the road to this process. Everybody concedes it's a lot of money but that's kind of in some ways beside the point in terms of interpreting what you say was agreed to, wasn't agreed to. We keep coming back to the 4-1-4 language that you all negotiated as to what it means and here we are again trying to interpret these aspects. It just doesn't bode well to me of where we're headed that we're near the end of anything in terms of these appeals. I'm not trying to make a speech. I'm just trying to figure you're both arguing language you agreed to but you both disagree with what it means, you disagree with the district court. Are we in for just a career of interpreting negotiated and agreed to language by the best lawyers in the world? I guess it's job security, right? For everybody in the room. You don't have to answer if you don't want to. I'm just kind of, you know, it's foreboding that every word we put in opinion, we got to be super-duper-duper-duper careful about what we say because there are going to be other appeals in this same case for which whether called unpublished or precedential, you know, caveat empta to what we say in it because the parties are going to ramp up on more appeals. So something about that process is worrying me institutionally as an individual with a thumb on a scale but just sort of, you know, where are we, you know, with all this language. But again, just my gratuitous notion, like I said, I guess it's job security. We'll see a lot of each other somewhere along the way. But at any rate. If I may just make two. Leave me with some optimism. Yes, Your Honor. So first of all, I would say there have not been a huge number of appeals. The settlement program has been in effect now for nearly three years, and class counsel I think says there have been eight or nine appeals relating to the settlement program. But in fact, several of those are consolidated. I think this is only, as I'm aware of, the fourth argument from, and there's one more still pending from appeals that we've brought relating to the settlement program over three years in a case involving hundreds of thousands of claimants and billions of dollars. That doesn't seem to me to be a huge number of appeals. And regrettably, in terms of the interpretation of the agreement and Your Honor's comment about the party's post-execution agreement, that's not an issue that I think has come up before. And the reason why it's come up here I think in practice, as a practical matter simply that the term claim files, which is intended to be a defined term in Section 4.4.14 is capitalized. The definition was left out of the definitional section, which created the ambiguity that resulted in the need for the parties to clarify how the agreement works. Okay. Now we get to what happened. Whoever drafted the definitions is probably in some draft, draft number 415 that somebody's eyes didn't catch and it's got there. Okay. Well, you left me with some optimism that we will have lots of business before us. But it's an important case and I don't mean to make light of it at all. We're here to do the business and we'll do it. Thank you for the briefing and the arguments in the case. It will be submitted along with the other cases. We heard and we'll decide it. Thank you.